UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SHEILA JEAN HENSLEY, MCLELLAN
HENSLEY, SR., and MCLELLAN
HENLSEY, JR.,

               Plaintiffs,                      Case Number 09-cv-12751
                                                       Honorable Thomas L. Ludington

v.

RONALD GASSMAN d/b/a/ REPORON, KEVIN
SCOTT, BRIAN GILBERT, JR., and
HOWIE HANFT,

               Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

On July 14, 2009, Plaintiffs Sheila Hensley ("Sheila"), McClellan Hensley, Sr. ("McClellan Sr."), and McClellan Hensley Jr. ("McClellan Jr.") (collectively "Plaintiffs") filed a complaint [Dkt. #1] against Ronald Gassman, both individually and d/b/a Reporon ("Gassman"), Kevin Scott ("Scott"), Brian Gilbert, Jr. ("Gilbert") (together with Scott, "Deputy Defendants"), and Howie Hanft ("Hanft"). The case arises from Gassman's request that the Deputy Defendants act as a "civil stand-by" while Gassman performed an ill fated vehicle repossession. Plaintiffs' complaint alleges multiple violations of 42 U.S.C. § 1983 including: a conspiracy to deprive them of their constitutional rights by the unlawful taking of the their property; an unlawful seizure of the family's Buick LaSabre; and failure to train and supervise by Sheriff Hanft because he did not provide or require sufficient training on responding to requests for oversight or assistance for vehicle repossessions.

Plaintiffs also allege a number of claims under Michigan law. Plaintiffs allege an assault and battery on Sheila because of Scott's attempt to break the car window with the butt of his weapon, Scott's subsequently breaking the car window with a hammer, and Gilbert's physically removing Sheila from the car. Plaintiffs also allege an assault and battery on McClellan Jr. based on Gassman's driving his vehicle into McClellan Jr.'s leg and an assault on McClellan Jr. resulting from Scott's pointing his weapon at McClellan Jr. Furthermore, Plaintiffs allege trespass to real property by Scott, Gilbert, and Gassman from their entering the Hensleys' property without permission after Sheila requested that Gassman, his assistant, and the officers leave. Finally, Plaintiffs allege trespass to chattels for the damage to the family's Buick during the repossession, and negligence in the wrongful repossession and subsequent breach of the peace that occurred during the repossession. Plaintiffs request both specific and exemplary damages.

Defendant Gassman filed an answer on September 21, 2009 [Dkt. #15], and Defendants Scott, Gilbert, and Hanft (collectively, the "Officer Defendants") filed an answer on September 24, 2009 [Dkt. #16]. The Officer Defendants then filed a motion for summary judgment on September 2, 2010 [Dkt. #31]. The motion contends that the Deputy Defendants did not seize the vehicle and were only present in an effort to "keep the peace." Further, any alleged seizure could have been lawfully accomplished because Sheila used the vehicle as an instrumentality of a crime in opposing the repossession. Even if the seizure were found to be inappropriate, the Deputy Defendants argue, that they are entitled to qualified immunity because their actions were that of a reasonable officer under the circumstances. The Officer Defendants further assert that Plaintiffs cannot identify any facts to support their assertion of a federal conspiracy claim or a failure to train or supervise claim against Hanft. As to the state law claims, the Officer Defendants contend that the claims fail as a

-2-

matter of law and that, alternatively, the deputies are entitled to governmental immunity. Plaintiffs filed a response on September 24, 2010 [Dkt. # 35].[1]  The Officer Defendants filed a reply on October 1, 2010 [Dkt. # 37].

Plaintiffs filed their own motion for summary judgment on September 4, 2010 [Dkt. #33]. Plaintiffs contend that based on the established facts, there is an absence of a genuine issue of material fact as to whether a Fourth Amendment unlawful seizure of personal property occurred. In support of this contention, Plaintiffs emphasize that there was no warrant or probable cause, and no exception to the warrant requirement to justify seizure of the vehicle.  Plaintiffs also contend that there is an absence of material fact as to whether a civil conspiracy to deprive the Plaintiffs of their Fourth Amendment rights under § 1983 occurred based on the established facts.  Defendants filed a response on September 24, 2010 [Dkt. #36].  Plaintiffs did not file a reply.

The Court held a hearing on both motions on November 9, 2010. For the reasons explained hereafter, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' motion for summary judgment and **GRANT IN PART** and **DENY IN PART** Plaintiffs' motion for summary judgment.

**I**

On August 13, 2008, Deputies Scott and Gilbert were dispatched at approximately 3:15 a.m. to assist Gassman in repossessing a Buick four-door car owned by McClellan Sr. but driven by his wife, Sheila.  The deputies were dispatched after Gassman, who made a profession of repossessing collateral for lenders in the Ogemaw County area, requested police presence when he sought to

---

[1]In their response to the Officer Defendants' motion for summary judgment, Plaintiffs also assert arguments against Defendant Gassman and his involvement with his wife's repossession business.  Defendant Gassman has not filed a motion for summary judgment. Because these arguments are not relevant to the instant analysis, they are not addressed in this Order.

repossess McClellan Sr.'s Buick.  Apparently, McClellan Sr. pulled a gun on Gassman during an earlier repossession.[2] The Deputy Defendants, who Gassman did not request by name, met Gassman about a mile from Plaintiffs' residence and followed him to Sheila and McClellan Sr.'s residence at  2085 Beach Road, Prescott, in Ogemaw County, Michigan. Gassman represented to the Deputy Defendants that he had an order for repossession of the Buick,[3] and both deputies saw corroborating paperwork in his hand but did not read the papers. McClellan Sr., a truck driver, was not present when the men arrived.  However, his wife Sheila, and his adult son, McClellan Jr. were present at the home.

Upon the Deputy Defendants' and Gassman's arrival, Sheila explained to Deputy Scott that the payments had been brought current with the lender. Scott responded that if that was the case, Sheila could bring the documentation to Gassman or Burns Recovery in the morning to sort out any problems but that Gassman could take the vehicle. (Pl.s' Mot. for Summ. J. Ex. 2 at 11.) Although Sheila was not addressing Deputy Gilbert, he too heard Sheila's claim that payments were current but also did not address Sheila's objection. Sheila then entered and started the car, and instructed McClellan Jr. to go into the house and get the phone. McClellan Jr. retrieved the phone, came back outside, and observed Gassman reaching under the vehicle while on the ground next to the car. Deputy Scott instructed Sheila to unlock the doors and exit the vehicle, but she refused.  Scott again instructed Sheila to exit the vehicle because after she started the car and put it into gear, he saw the

---

[2]McClellan Sr. subsequently pleaded to a misdemeanor with a delayed sentence as a result of this incident.

[3]Gassman had a directive from a creditor, not a court order, to repossess the Hensley's Buick in July, but at the time of the actual repossession on August 13, 2008, the payments on the car had been made and the creditor had retracted the directive.

-4-

car moving forward while Gassman and his assistant were next to and partially under the car. This caused the tow truck, which was hooked to the car, to move forward towards the men.  At this juncture, the Deputy Defendants would later explain that they believed Sheila had committed a criminal offense by moving the car while Gassman and his assistant were at least partially underneath.

When Sheila refused to exit the vehicle, Deputy Scott unsuccessfully tried to break the car window with the butt of his handgun.  Scott then instructed Gassman to pull the vehicle into the street because McClellan Jr. had gone inside the house where Scott believed weapons were present. Deputy Scott thought removing the car from the property would be the safest way to resolve the issue.[4] When McClellan Jr. began walking towards the car with an object in his hands, Deputy Scott raised his weapon.[5] He then advised McClellan Jr. to stay back. McClellan Jr. responded by raising his hands in the air and taking a few steps backwards. Scott then lowered his weapon. Deputy Scott only had his weapon raised long enough to tell McClellan Jr. to step back. McClellan Jr. had a cordless phone in his hand at the time, but Deputy Scott, who was approximately seventy-five to ninety feet away, was unable to see the object clearly.

As Gassman pulled the car into the road, it did not follow a straight path and hit a boat parked adjacent to the property, causing damage to the car.  Once the car was in the road, Scott again

_____

[4]Plaintiffs question Deputy Scott's decision that this was the safest way to resolve the issue, when they contend the situation could have been more easily and safely resolved by verifying Sheila's contention that the payments on the car were up to date.

[5]Deputy Scott denies pointing his weapon at McClellan Jr., but was concerned about the possibility of McClellan Jr. going into the house to get a weapon, and that he had seen something in McClellan Jr.'s hand when he exited the house.  Scott concluded this was most likely a phone, and Gilbert confirmed that he also saw a phone in McClellan Jr.'s hand. However, for the purposes of its motion, Defendants assume that Scott pointed his weapon at McClellan Jr.

ordered Sheila to exit the car, but she still did not comply.  Scott then asked Gassman for a hammer, which he used to break the passenger window.  Gilbert pulled Sheila from the car.  She was allowed to retrieve her personal items before Gassman completed the repossession. The parties stated at oral argument that Gassman later realized his mistake in repossessing the vehicle and had another tow truck driver return the vehicle the following morning.

On August 21, 2008, a warrant request form seeking felonious assault charges was sent to the prosecutor's office, which authorized the charges. A judge signed a felony warrant on August 25, 2008, charging Sheila with two counts of assault with a dangerous weapon in violation of M.C.L. § 750.82.  A preliminary hearing was held on November 25, 2008, where Sheila was represented by counsel, who cross-examined Deputy Scott, Gassman, and Wottrich.  The three men testified that they believed there was probable cause for the prosecution.[6] The district court agreed that probable cause had been established and Sheila was bound over on two counts of felonious assault. The court also added a separate misdemeanor count of reckless driving based on Sheila's conduct in the driveway.  In finding probable cause, the district court noted that Michigan residents have a right to protect personal property, but cannot use deadly force to do so.

Sheila pleaded no contest to both counts of felonious assault as well as a misdemeanor of attempted aggravated assault on May 19, 2010. The court accepted the police report as the factual

---

[6]Plaintiffs note in their response that the Officer Defendants' brief in support of their motion incorrectly asserts that Scott testified consistently at the preliminary examination and his deposition, and that this testimony was consistent with the police report. Plaintiffs assert that the police report states that the danger to Gassman and his helper was caused by the tow truck rolling backwards, but that Scott testified at his deposition that he was concerned Sheila would put the vehicle in reverse and run one of the men over because there was enough play between the sling and the two vehicles. Additionally, Plaintiffs note that at the preliminary examination, Scott testified that Sheila had put the car in reverse, not that she pulled the car forward.

basis for the plea, and summarized the facts for the felonious assault counts as follows:

> And that based on the report, it appears that [Sheila] put into action a movement of the vehicle that . . . Gassman and . . . Wottrich . . . were under and that Deputy Scott actually had to yell [for Sheila] to stop, shut off the car. She refused to do so [and] the vehicle, almost ran over the gentlemen. I am satisfied that there is a factual basis.

(Def.'s' Mot. for Summ. J. Ex. 12 at 10-11.)  The court also advised Sheila that although she was pleading "no contest," that her plea would be treated as a guilty plea for the purposes of that immediate hearing and any future hearing.  (*Id.* at 9.)

## II

A motion for summary judgment should be granted if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).  The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  A fact is "material" if its resolution affects the outcome of the case. *Lenning v. Comm'l Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001).  "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000).  An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics and Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of

material fact. *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002).

The party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The party who bears the burden of proof must present a jury question as to each element of the claim, *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000), rather than raise only "metaphysical doubt as to the material facts." *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

### III

### A

### 1

The Michigan "self-help" repossession statute empowers secured creditors to seize collateral upon dishonor of a security agreement if repossessed without a breach of the peace. M.C.L. §

440.9503. If, however, the secured party does not comply with the statute, the debtor may recover damages for his or her loss.  M.C.L. § 440.9625(2), (3). If the collateral is a consumer good, the debtor may recover an amount not less than the credit service charge plus 10% of the principal amount of the obligation or the time-price differential plus 10% of the cash price. M.C.L. § 440.9625(3)(b).

A secured creditor also has the option of obtaining a court order for repossession of the collateral through a claim and delivery action.  M.C.R. 3.105.  Claim and delivery is a civil action to recover possession of goods or chattels which have been unlawfully retained and any damages sustained by the unlawful detention.  M.C.R. 3.105(A).  The secured creditor can bring a complaint to the court describing the property claimed, its value to be used to set the amount of bond, and the nature of the claim and basis for the judgment requested. M.C.R. 3.105(C). The secured party can also join the claim for the debt as a separate count in the complaint.  *Id.* After filing the complaint, the secured party can then file a verified motion requesting possession of the collateral pending final judgment. M.C.L. 3.105(E). Ultimately, the Court may order the "sheriff or court officer" to, inter alia, "seize the property described in the order." M.C.R. 3.105(F).

**2**

The Deputy Defendants first contend that their presence at the residence did not constitute improper state action by reason of their mere presence during Gassman's self-help repossesion of the collateral.  A private party's repossession "does not become 'state action' within the scope of § 1983 merely by virtue of a police officer's 'presence at the site' for the purpose of 'observ[ing] and monitor[ing]' the repossession." *McFarland v. Bob Saks Toyota, Inc.*, 466 F. Supp. 2d 855, 864 (E.D. Mich. 2006) (citing *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.*, 32 F.3d

989, 995 (6th Cir. 1994)).  To become state action, "an officer [must] take a more active hand in the repossession," such as "compulsion, encouragement, or other forms of affirmative participation." *Id.* (citation and quotation omitted).  Here, the Deputy Defendants assert that their actions do not reach the level of affirmative participation required to transform their role from peacekeeper to active participant as a matter of law.

In support of this, the Deputy Defendants cite the cases of *Haverstick*, *supra*, and *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507 (5th Cir. 1980).  In *Haverstick*, the Sixth Circuit found that the police officer's presence and assistance during a repossession did not constitute state action, even though the police officer had accompanied the men doing the repossession to the property, and after arriving at the property took steps to attract attention to himself while the repossession men "commandeered the wrecker and drove it through the located gate onto the public street." 32 F.3d at 993. The officer also provided the repossessing men additional time by questioning the plaintiff for approximately five minutes.  *Id.*  The Sixth Circuit found that no constitutional right was transgressed by the police officer's actions.  *Id.* at 996. The Deputy Defendants argue that in the instant case, Deputy Scott was even less involved in the repossession by refusing Sheila's request to intervene and instead standing by until it was necessary to intervene because of Sheila's conduct.

Additionally, in *Menchaca*, the Fifth Circuit[7] found that there was no state seizure when police officers were called to the scene of a civil repossession because of a breach of the peace. 613 F.2d at 510.  Upon their arrival, the officer informed the plaintiff that the "repossession was a civil matter and that the only reason the police were there was to quiet a reported disturbance." *Id.* The

---

[7]Although a Fifth Circuit case, the Sixth Circuit relied on reasoning from *Menchaca* in deciding *Haverstick*.  32 F.3d at 995.

officers also warned the plaintiff that he could be arrested if he continued to use loud and abusive language, which would create a breach of the peace. *Id.* The court found that no § 1983 claim existed because there was no evidence that the police officers intervened and aided in the repossession. *Id.* at 512-13.

The Deputy Defendants emphasize that neither Deputy Defendant ordered Gassman to take the car until Sheila sought to move the car with Gassman and his assistant present. As a result, the Deputy Defendants assert that they did not encourage or discourage Gassman from repossessing the vehicle, which was repossessed without the Deputy Defendants' interaction or assistance. Accordingly, the Deputy Defendants contend that there was no state action to implicate the Fourth Amendment.

The Deputy Defendants' conduct did constitute more than mere presence. Deputy Scott was informed by his conversation with Sheila that the loan payments were current and that the repossession was improper. Gassman could have verified Sheila's assertions and the deputies were clearly aware of that option. Equivalently, Gassman could have been directed to pursue a judicial remedy, another option the deputies could have suggested. Most importantly, Plaintiffs correctly contend that Deputy Scott's decision that Gassman could take the Buick and that Sheila could resolve the problem the following day exceeds mere observation . Deputy Scott authorized Gassman to take Sheila's private property and that is sufficient to establish state action. Accordingly, Plaintiffs have established a Fourth Amendment violation, and their motion for summary judgment on the issue of state action and the resulting Fourth Amendment violation will be **GRANTED**. Defendants' motion for summary judgment on this issue is thus **DENIED.**

**B**

The Deputy Defendants argue that summary judgment is still proper because they could lawfully have seized the vehicle because it was used as a weapon to commit two felony assaults. Under both federal and state law, law enforcement officers may seize personal property, including vehicles, which are in plain view when there is probable cause to believe "that the item seized is contraband or evidence of a crime." *United States v. Richardson*, 40 F. App'x 7, 13 (6th Cir. 2002); *see also United States v. Baro*, 15 F.3d 563, 567 (6th Cir. 1994); *People v. Anderson*, 166 Mich. App. 455, 479 (1988); *People v. Sorrell*, 139 Mich. App. 707, 710 (1985); *People v. Cook*, 24 Mich. App. 401, 408-09 (1970). It is also reasonable for a law enforcement officer to "temporarily seize an automobile and occupants for investigation in the absence of probable cause if a police officer has reasonable suspicions, based on specific and articulable facts, that the occupants have been involved or are about to be involved in criminal activity." *United States v. Pace*, Nos. PO510092, PO510063, 2007 WL 3088221, at *4 (E.D. Tenn. Oct. 18, 2007) (citing *Ornelas v. United States*, 517 U.S. 690, 693 (1996); *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

The Deputy Defendants contend that the vehicle repossessed by Gassman was the instrumentality of a crime and that probable cause that the car was unlawfully used has been established. More specifically, probable cause for Sheila's felony assault with a dangerous weapon charge was challenged at a contested hearing and resolved against her. As a result, the Deputy Defendants contend that Sheila and her privies, McClellan Sr. and McClellan Jr., are now barred from challenging the issue of probable cause in the instant lawsuit. A preliminary hearing is an adversary hearing under Michigan law because the accused has the right to call witnesses and cross-examine witnesses produced by the state. *People v. Johnson*, 8 Mich. App. 462, 466 (1967). Where

-12-

a party has had a "full and fair opportunity" to litigate an issue in an earlier state proceeding, that party is precluded from relitigating the same issue in a later federal case. *Allen v. McCurry*, 449 U.S. 90, 94-96 (1980). "[W]here the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action." *Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987). As a result, even if there is a factual question as to whether the Deputy Defendants impermissibly assisted in the repossession making it a state action, they were entitled to seize the vehicle after it had been used as an instrument of the crime.

The Officer Defendants also contend that Sheila's claims must also be dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), because she pleaded no contest to the charges. In *Heck* the Court found that in order to recover damages for alleged harms caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.* at 486. "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Id.* at 487. The Officer Defendants contend that *Heck* also bars any challenge Sheila may advance with regard to whether there was probable cause to believe she had committed a crime or that she used the vehicle to commit the crimes.[8]

---

[8]The Officer Defendants also note that even if the Court were to determine anew whether probable cause existed, the facts show that it did in the instant case. Probable cause to arrest exists if reasonably trustworthy facts and circumstances known to the police officer were sufficient for a

Plaintiffs disagree. Although the Deputy Defendants contend that they could have seized the car as evidence, they did not seize it as evidence and instead allowed it to be repossessed by an agent of a lender. As a result, the argument that the vehicle could have been seized as evidence of a crime is simply inapplicable. Plaintiffs also contend that the holding in *Heck*, *supra*, is irrelevant because Sheila is not disputing probable cause or the validity of her conviction. Plaintiffs' contention as to *Heck* is correct, as *Heck* addresses the proper route for seeking a remedy that would result in rendering a conviction or sentence invalid and Sheila is not disputing her conviction.

Even if such a seizure of the vehicle could have been properly accomplished, the vehicle was not seized either by the deputies or because it was the instrumentality of a crime. Instead, Gassman was permitted to seize the vehicle as the creditor's collateral. Accordingly, Defendants' motion for summary judgment on this issue will be **DENIED**.

### C

The Deputy Defendants alternatively claim that they are also entitled to dismissal of the § 1983 claims under the doctrine of qualified immunity. In order to state a § 1983 claim, a plaintiff must set forth facts that establish the deprivation of a right secured by the Constitution or laws of the United States caused by a person acting under the color of state law. *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006). Under qualified immunity, government officials performing discretionary functions are generally "shielded from liability from civil damages insofar

---

prudent man to believe the arrestee had committed, or was committing, an offense. *Diamond v. Howd*, 288 F.3d 932, 936 (6th Cir. 2002). Probable cause is assessed from the perspective of a reasonable officer on the scene, and not with the 20/20 vision of hindsight. *Kostrzew v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001). Here, both deputies saw Sheila start the car and put it in gear, and in doing so she either caused or failed to prevent the car from moving towards Gassman and Wottrich, who were next to and partially under the car.

as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (citation and quotation omitted). Qualified immunity is evaluated under a purely objective standard, and an official's subjective belief is not considered. *Davis v. Scherer*, 468 U.S. 183, 184 (1984). Determining qualified immunity for government officials requires two inquiries: (1) whether the plaintiff has shown that a constitutional violation has occurred; and (2) that the right was clearly established at the time of the violation. *Sigley*, 437 F.3d at 538-39. If a factual dispute must be resolved to determine the reasonableness of an action under the Fourth Amendment, dismissal based on immunity is improper. *Painter v. Robertson*, 185 F.3d 558, 567 (6th Cir. 1999).

The Deputy Defendants assert they were not on notice that their actions in the instant case implicated the Fourth Amendment, let alone that their actions violated the Fourth Amendment. To support their assertion, the Deputy Defendants contend that an objectively reasonable police officer could have reasonably, but mistakenly, concluded that their actions did not constitute a seizure without direct, physical involvement with the repossession. *Haverstick*, 32 F.2d at 995 ("it nontheless cannot be said that [the police officer] knew that his actions or failure to act translated into participation in the private foreclosure to a degree tantamount to state action."). Because the Deputy Defendants were present as a civil standby in monitoring a private repossession they believed to be lawfully authorized, it was reasonable to not have known their actions constituted invalid participation in the taking. As a result, the Deputy Defendants believe they are entitled to dismissal of Plaintiffs' federal claims on the merits because of qualified immunity. *See also id.*

It remains only to ask whether this possible Fourth Amendment violation "involve[d] clearly established constitutional rights of which a reasonable person would have known." *McFarland v.*

*Bob Saks Toyota, Inc.*, 466 F. Supp. at 865 (citation omitted). "[T]he Supreme Court[] [has] clearly established the principle that the police commit a 'seizure' within the meaning of the Fourth Amendment when they dispossess an individual of his property in aid of a private party's repossession effort." *Id.* Furthermore, "the Sixth Circuit's decisions in *Haverstick* and *Coleman*, along with a host of rulings from other circuits, recognize the legally significant distinction between the mere presence of the police at a private repossession and their active participation in this effort." *Id.* The Court in *McFarland* stated that the Constitution is offended when police act "in a way that actively and affirmatively assists in a private repossession–as opposed to merely monitoring and diffusing a potentially volatile situation–runs the risk of establishing a 'curbside courtroom,' in which officers decide who [i]s entitled to possession" of disputed property. *Id.* at 866. The Court ultimately found that based on established precedent it could not say, as a matter of law, that the conduct of the defendant officers in that case was objectively reasonable, such that they were entitled to qualified immunity. *Id.*

The Deputy Defendants argue that *McFarland* is inapplicable to the instant case because it did not involve a civil repossession but was an investigation into suspected criminal activity in the purchase of a vehicle under a false name. 466 F. Supp. at 858. The dealership then had the plaintiff come back to the dealership where he was interrogated by police officers and the car he had fraudulently purchased was taken back. *Id.* at 859. The officers were not primarily present in order to keep the peace or to perform a repossession, but to investigate allegations of fraud. *Id.* at 864. The Deputy Defendants note that this differs significantly from the facts of the instant case where they were summoned for the sole purpose of attempting to keep the peace during a civil repossession but had to respond when Sheila breached the peace.

-16-

Plaintiffs contend that they have established sufficient facts to present to a jury that the Deputy Defendants, at a minimum, were deliberately indifferent to Gassman's authority to repossess the Hensley's Buick. Plaintiffs rely on *Farmer v. Brennan*, 511 U.S. 825 (1994), a case based on the denial of medical treatment under the Eighth Amendment, in support of their assertion. In *Farmer*, the court stated than an official defendant "would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Id.* at 844 n.8. Plaintiffs contend that similarly Deputy Scott did not verify that the repossession was proper after Sheila's request but instead advised that the vehicle would be taken.

A government official has two layers of protection under the objective reasonableness standard when applying qualified immunity to Fourth Amendment constitutional claims–one under the Fourth Amendment constitutional standard itself and another under qualified immunity defense. *Anderson v. Creighton*, 83 U.S. 635, 643-45 (1987). This can, however, lead to the awkward conclusion of a government official acting in a reasonable manner which affords him protection through the defense of qualified immunity though he acted unreasonably under the Fourth Amendment constitutional standard. *Saucier v. Katz*, 533 U.S. 194, 203 (2001); *Anderson*, 483 U.S. at 634. In the instant case, the Deputy Defendants reasonably, though mistakenly, believed that there was a repossession order even though the Deputy Defendants did not verify the legitimacy of the file in Gassman's possession. Accordingly, Defendants' motion for summary judgment based on their entitlement to qualified immunity on Plaintiffs' Fourth Amendment violation claim is **GRANTED**. Plaintiffs' motion for summary judgment is, as a result, **DENIED**.

-17-

**D**

To bring a successful § 1983 conspiracy claim, a plaintiff must establish that (1) the alleged conspirators formed a plan to violate the plaintiff's constitutional rights; (2) the alleged conspirators share in the objective of the plan; (3) an overt act was committed in furtherance of the plan; and (4) the act caused some injury to the plaintiff. *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003). Conspiracy claims must also be pled with particularity. *Id.* The Deputy Defendants conclusively contend that they did not violate McClellan Sr.'s constitutional rights and, as a result, there cannot be a factual issue as to whether they formed a plan to violate his rights. Assuming there was a constitutional violation, the Deputy Defendants additionally contend that there is no evidence they agreed with Gassman to commit such a violation. The Deputy Defendants offer 42 U.S.C. § 1985(3) as governing conspiracy claims under § 1983, which requires a showing that the conspirators' actions were motivated by "some racial, or perhaps otherwise, class-based, invidious" discrimination, and that no such evidence exists in this case. *Haverstick*, 32 F.3d at 994. As a result, the Deputy Defendants assert they are entitled to summary judgment on this claim.

The Deputy Defendants contention that conspiracy claims under § 1983 are only available for equal protection actions pursuant to 42 U.S.C. § 1985(3) is incorrect. Instead, the Sixth Circuit and the United States Supreme Court have recognized that a conspiracy to violate § 1983 is not limited to claims based on equal protection or denial of privileges and immunities related to class-based limitations or other protected characteristics. *See Dennis v. Sparks*, 449 U.S. 24, 24 (1980); *Macko v. Bryon*, 641 F.2d 447, 449 (6th Cir. 1981). Furthermore, because there is rarely direct evidence of an express conspiracy agreement, circumstantial evidence may provide adequate proof of the conspiracy. *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000). Plaintiffs contend that

here the plan was to remove the vehicle from the property regardless of the true status of the repossession order. Gassman requested the assistance of Deputies Scott and Gilbert to achieve the alleged conspiratorial objective of taking possession of the vehicle. Deputy Scott told Sheila she would have to deal with the possibly wrongful repossession later that morning, ignored her protests, and ordered Gassman to remove the car to the street.  Plaintiffs contend that Scott aimed his weapon at McClellan Jr. in order to prevent interference in the accomplishment of the conspiracy's goal. Scott then continued the alleged conspiracy by asking Gassman for a hammer which he used to break out the car window, and Gilbert completed the last necessary overt act to accomplish the conspiratorial goal by removing Sheila from the vehicle.

According to Plaintiffs, a reasonable jury could find that the Deputy Defendants intended to leave Plaintiffs' home with the car once they arrived and that the joint activity by the Deputy Defendants and Gassman was related to a mutual understanding. Specifically, based on the statements at the start of the incident by Deputy Scott to Sheila dismissing her claim that the repossession was unlawful, Plaintiffs contend that it is a reasonable inference that the meeting prior to arrival at the location was for more than just the display of a document that the deputies did not read, demonstrating a clear meeting of the minds. *See Huron Valley Hosp., Inc. v. City of Pontiac*, 650 F. Supp. 1325, 1344 (E.D. Mich. 1986).

Although the Deputy Defendants were incorrect in asserting that § 1983 conspiracy claims are limited to equal protection actions, there does not appear to be any issue of material fact on which reasonable minds could differ as to whether a conspiracy occurred. There is no evidence that there was an agreement for unlawful action but instead Gassman and the Deputy Defendants thought, albeit incorrectly, that they were acting lawfully. Defendants' motion for summary

judgment on the conspiracy will therefore be **GRANTED**, and Plaintiffs' motion for summary judgment on their conspiracy claim will be **DENIED**. As a result, the conspiracy claim against Gassman must also be **DISMISSED**.

### E

The Officer Defendants lastly assert that Plaintiffs' failure to train or supervise claim against Sheriff Hanft fails for at least three reasons. First, Sheriff Hanft cannot be liable under § 1983 because there was no underlying constitutional violation by the individual Deputy Defendants. *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001). This first argument is inapplicable because, as noted above, there was a constitutional violation by the Deputy Defendants. Second, supervisory liability cannot attach to Sheriff Hanft because a supervisor is not liable under § 1983 for failing to train unless he either encouraged the specific incident of misconduct or in some other way directly participated in it. *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982). This requires a plaintiff to show, at a minimum, that the official at least implicitly authorized, approved, or knowingly acquiesced in the offending officers' unconstitutional conduct. *Id.* The Officer Defendants contend that here there is no evidence that Sheriff Hanft, who was not aware that the Deputy Defendants were dispatched to Plaintiffs' residence, in any way authorized, approved, or knowingly acquiesced in the Deputy Defendants action.

Third, for a plaintiff to successfully assert a failure to train theory, he or she must prove that (1) the training program was inadequate; (2) that the inadequacy is the result of the city's deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury. *Hill v. McIntyre*, 884 F.2 271, 375 (6th Cir. 1989). A plaintiff must show that the municipality, or in the sheriff in the instant case, was aware of prior unconstitutional actions by its employees and

-20-

a failure to take corrective measures in order to provide "deliberate indifference." *Bertl v. City of Westland*, No. 04-CV-75001, 2007 U.S. Dist. LEXIS 83290, at *40 (E.D. Mich. Nov. 7, 2007); *see also Miller v. Calhoun County*, 408 F.3d 803, 815 (6th Cir. 2005). "Mere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to prove municipal liability." *Bertl*, 2007 U.S. Dist. LEXIS, at *40 (citation and quotation omitted). Proving deliberate indifference instead requires a showing of a "history of widespread abuse that has been ignored by the municipality." *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994). The Officer Defendants assert that here there is no evidence present of any abuse, let alone widespread abuse, with regard to the alleged wrongful seizures of vehicles without a warrant by improperly involving deputies in civil repossession of a vehicle.

Plaintiffs alternatively contend that the sheriff's alleged failure to train officers about how to conduct civil stand-bys represents a "good start" toward demonstrating an issue of fact for the jury and that because there are no policies for civil stand-bys, there is an obvious need for training. (Pl.s' Resp. to Def.s' Mot. for Summ. J. at 20.) Plaintiffs also assert that because the officers were not informed of applicable state law that requires examining the legitimacy of civil paperwork, there is a reasonable likelihood that a citizen will be improperly deprived of property. The lack of a training program for a duty that is within the responsibility of a municipal employee is, according to Plaintiffs, deliberate indifference to constitutional protections. *See Russo v. City of Cincinatti*, 953 F.2d 1036, 1045-46 (6th Cir. 1992) (discussing deliberate indifference under a failure to train claim in the context of officer training on the proper exercise of force on mentally disturbed individuals).

Plaintiffs have not identified any facts demonstrating, at a minimum, that Sheriff Hanft encouraged or participated in any wrongful conduct or that he authorized, approved, or knowingly

-21-

acquiesced in any unconstitutional actions by his employees. Plaintiffs have also not provided any evidence that the training program was inadequate or that Hanft had knowledge of constitutional violations and failed to take corrective measures. Instead, Plaintiffs have merely provided what they characterize as a "good start" towards demonstrating an issue of fact. As a result, Defendants' motion for summary judgment on this claim will be **GRANTED**, and Plaintiff's motion for summary judgment on this claim will be **DENIED**.

## IV

Defendants' motion also challenges Plaintiffs' assault, assault and battery, trespass to chattels, trespass to real property, and negligence claims under Michigan law. However, because Defendants are entitled to summary judgment on all of Plaintiffs' § 1983 claims, the Court will decline to exercise jurisdiction over Plaintiffs' state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Washington v. Starke*, 855 F.2d 346, 351 (6th Cir. 1988) ("It is a clear rule of this circuit that if a plaintiff has not stated a federal claim, his pendant state law claims should be dismissed.").

## V

Accordingly, it is **ORDERED** that Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

It is further **ORDERED** that Plaintiffs' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

It is further **ORDERED** that Plaintiffs' claim of unlawful seizure under 42 U.S.C. § 1983 against Defendants Kevin Scott and Brian Gilbert, Jr., is **DISMISSED WITH PREJUDICE** on the basis of qualified immunity.

It is further **ORDERED** that Plaintiffs' claim of conspiracy to deprive of constitutional rights under 42 U.S.C. § 1983 against Defendants Kevin Scott, Brian Gilbert, Jr., and Ronald Gassman is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Plaintiff's claim of failure to train and supervise under 42 U.S.C. § 1983 is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that jurisdiction is **DECLINED** over Plaintiffs' remaining state law claims against all Defendants.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: January 14, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 14, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS

---